UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN NEWMAN,

                            Plaintiff,

   -against-                                  3:17-CV-0918 (LEK/DEP)

ANTHONY J. ANNUCCI and THOMAS J.
HERZOG

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On February 13, 2017, pro se plaintiff John Newman, who was serving a term of post-release supervision in connection with his conviction in New York state court, was arrested and returned to the custody of the New York Department of Corrections and Community Supervision (the "DOCCS"). He has brought claims under 42 U.S.C. § 1983 against defendants Anthony J. Annucci and Thomas J. Herzog, Commissioner and Deputy Commissioner of DOCCS, respectively, alleging that the terms of his post-release supervision and his return to prison violated the U.S. Constitution. Dkt. No. 17 ("Am. Compl."). He seeks his release from custody, termination of his post-release supervision, damages of $5,600,000, and a declaration that post-release supervision is unconstitutional. Id. Defendants move to dismiss. Dkt. No. 24 ("Motion"); see also Dkt. Nos. 32 ("Opposition"), 33 ("Reply"). For the reasons that follow, the Motion is granted without prejudice to the filing of a second amended complaint.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In determining whether a complaint states a "plausible" claim, the Court may disregard "labels and conclusions . . . devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "[w]hen there are well-pleaded factual allegations," a court must "assume their veracity," id. at 679, and deny the motion to dismiss if they "raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct, Twombly, 550 U.S. at 570. Where, as here, a plaintiff is litigating pro se, the Court must construe his or her pleadings "liberally and interpret[] them to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F. 3d 399, 403 (2d Cir. 2013).

"In considering a motion to dismiss for failure to state a claim . . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). When a Plaintiff is proceeding pro se, the Court may also consider certain other "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," including "factual allegations in [the plaintiff's] papers opposing the motion" and "documents . . . attache[d] to [the plaintiff's] opposition papers." Scalpi v. Town of E. Fishkill, 14-CV-2126, 2016 WL 858955, at *3 (S.D.N.Y. Feb. 29, 2016); accord Jones v. Annucci, No. 16-CV-3516, 2018 WL 910594, at *5 (S.D.N.Y. Feb. 14, 2018).[1]

---

[1] Defendants cite Koehler v. Metro. Transportation Auth., 214 F. Supp. 3d 171, 174 (E.D.N.Y. 2016), for the proposition that the Court should not consider documents attached to Plaintiff's Opposition, but that case did not involve a pro se litigant.

## III. BACKGROUND

The facts in this section are drawn from the Amended Complaint and related submissions. In particular, the Amended Complaint references a "dialogue" reflected in "documents previously provided." Am. Compl. at 2. The Court construes this to be a reference to letters between the parties that the Plaintiff attached to the original complaint, Dkt. No. 1-1 ("Exhibits"). The Court therefore considered those letters, which are "incorporated by reference in the [amended] complaint," in deciding the Motion. DiFolco, 622 F.3d at 111. The Court also considered clarifying statements in the Opposition. See Jones, 2018 WL 910594, at *5 (explaining that a court may on a motion to dismiss "consider factual allegations made by a pro se party in his papers opposing the motion"). The allegations in the Amended Complaint, as enhanced in the Exhibits and the Opposition, are construed liberally in plaintiff's favor and taken as true for the purpose of deciding the Motion. See Sykes, 723 F. 3d at 403.

On December 29, 2009, a New York state court sentenced Plaintiff to five years and six months in prison. See Am. Compl. at 2. On August 9, 2013, Plaintiff was released subject to DOCCS supervision and numerous conditions. Id. These included requirements that, unless his parole officer permitted otherwise, he could not: (1) leave his approved residence or have "unauthorized" visitors; (2) possess a computer or go on the internet; (3) drive a motor vehicle; (3) "enter or be within 1,000 feet of places where children congregate such as toy stores, parks, pet stores, playgrounds, malls, bike trails, video galleries, skating rinks, amusement parks, bowling alleys, pool halls, etc."; (4) possess photographs of minors; (5) have contact with minors, including his children; (6) establish "a relationship that can be described as, but not limited to, the following: intimate, romantic, sexual, ongoing, social and/or indiscriminate sexual encounter with another person" without notifying his parole officer of the relationship and the

3

third party of his criminal history of sexual abuse; drink alcohol or frequent establishments that serve it as their main business. Exhibits at 2, 6–9. He was required to permit his parole officer to visit him at his home and workplace and to "permit the search and inspection of [his] person, residence, and property . . . ." Opp'n at 13.

On August 19, 2013, ten days after Plaintiff's release on parole, DOCCS issued an "administrative warrant" for Plaintiff's arrest. Am. Compl. at 2. On January 23, 2014, he was arrested and returned to custody, where he remained for almost three years. Am. Compl. at 2. In 2015, while he was still incarcerated, Plaintiff wrote a letter to Annucci complaining about the conditions of his release. Exhibits at 1. Herzog replied on May 7, 2015. Id. He wrote, among other things, that "conditions of release are meant to provide structure for all offenders to guide them in [their] transition to the community," and "are not different than what most law abiding citizens live by each and every day." Id. Plaintiff wrote back that he strongly disagreed; he believed his conditions of parole violated his constitutional rights. Id. at 2–3.

On August 5, 2015, Plaintiff wrote Governor Andrew Cuomo a letter expressing similar concerns, stating that "at times [he] think[s] that prison is a privilege and parole is the punishment," because the state gave him "even more restrictions to live with" when he was released on parole. Id. at 5. Listing his conditions of release, Plaintiff complained that they were "arbitrary," "ha[d] nothing to do with [his] crime," and were "vague, and/or open to be taken advantage of." Id. at 6, 10. He stated he "live[d] in fear" of being "put back in prison because [he] said hi to someone in a subway station or because [he] shopped at Walmart." Id. at 10. DOCCS responded to the letter, encouraging Plaintiff to discuss his complaints with his parole officer when released. Id. at 11.

On January 12, 2017, Plaintiff was released on post-release supervision.[2] Once again, however, his conditional freedom was short-lived. On February 13, 2017, DOCCS issued another administrative warrant and arrested him. Id. at 3. Plaintiff was eventually moved to Shawangunk Correctional Facility, where he is currently incarcerated. Dkt. No. 44.

Plaintiff filed this case on August 21, 2017. Dkt. No. 1 ("Complaint"). The Court granted him leave to proceed in forma pauperis and accepted the majority of his Complaint for filing. Dkt. No. 11. On December 4, 2017, Plaintiff amended his complaint. Am. Compl. In it, he alleges that his conditions of release, its revocation, and his return to custody violated his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights and were the result of "polic[ies] written and/or enforced" by Defendants. Id. at 1–4. On March 9, 2018, Defendants filed the Motion, which is fully briefed.

## IV. DISCUSSION

To state a claim under § 1983, a plaintiff must plausibly allege the violation of a right secured by the Constitution or another federal law by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quotations omitted). A private plaintiff may use it to sue state officials (in their individual capacities) for damages or (in their official capacities) for prospective relief from an ongoing violation of federal law. See State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007). A parole condition is

---

[2] Unlike parole, which is discretionary release before the expiration of a prison term, post-release supervision, like supervised release in the federal system, commences when a defendant's prison term expires. See N.Y. Penal Law § 70.45.

"ongoing" not only when it is in effect, but also when there is a "reasonable expectation" that the condition will be re-imposed. Doe v. Annucci, No. 14-CV-2953, 2015 WL 4393012, at *6–7 (S.D.N.Y. July 15, 2015) (holding that sex offender parolee who was wrongfully deprived of contact with his infant son could maintain a claim for injunctive relief even though the offending parole conditions were modified, permitting plaintiff to live with his family).

### A. The Heck Doctrine

A state prisoner may not bring a claim under § 1983 if judgment in his favor "would necessarily demonstrate the invalidity of [his] confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005). Therefore, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck v. Humphrey, 512 U.S. 477, 481 (1994). Heck bars challenges under § 1983 not only to the substance of state decisions, but also to the procedures used to determine that the plaintiff should be incarcerated where the "principal procedural defect complained of . . . would, if established, necessarily imply the invalidity of the deprivation [of liberty]." Edwards v. Balisok, 520 U.S. 641, 646 (1997). Accordingly, "[c]ourts have applied Heck to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation" on substantive or procedural grounds "unless that revocation decision [was previously] reversed or the underlying conviction [was] set aside." Lee v. Donnaruma, 63 F. App'x. 39, 41 (2d Cir. 2003); see also Praileau v. New York, No. 17-CV-836, 2017 WL 6033738, at *4-5 (N.D.N.Y. Nov. 8, 2017); Webster v. Himmelbach, 271 F. Supp. 3d 458, 470 (W.D.N.Y. 2017).

Plaintiff alleges he is in custody based on a revocation of post-release supervision, not parole. Opp'n at 1, ¶2. However, post-release supervision is treated the same as parole under

6

New York law, see N.Y. Penal Law 70.45(3), [3] is a "distinct but integral part of the determinate [criminal] sentence," imposed by the state court, Vincent v. Yelich, 718 F.3d 157, 162 (2d Cir. 2013), and can also be attacked, along with its revocation, in a petition for habeas corpus, see Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006). Therefore, as the district court held in Kearney v. Kozloski, Heck appears to preclude Plaintiff's claims under § 1983 that his "post-release supervision was wrongly and unconstitutionally revoked." No. 14-CV-1446, 2016 WL 4690400, at *4 (N.D.N.Y. Sept. 7, 2016). Because Plaintiff has not alleged that state authorities have reversed DOCCS's decisions to revoke his release, or that a federal court has granted a writ of habeas corpus declaring his confinement unlawful, he cannot challenge it under § 1983. To challenge his present confinement in federal court, he must instead exhaust any remedies available in state court and, if he cannot get relief there, file a petition for a writ of habeas corpus under 28 U.S.C. §§ 2254. See Heck, 512 U.S. at 481.

The Heck doctrine may also bar Plaintiff's challenge to the conditions of his post-release supervision (to the extent he alleges they will be re-imposed upon his release). Courts disagree on whether a properly filed petition for a writ of habeas corpus is the only way for a state prisoner to challenge his existing conditions of supervised release in federal court. Compare Webster, 271 F. Supp. 3d at 470 and Williams v. Wisconsin, 336 F.3d 576, 579–80 (7th Cir. 2014) with Thornton v. Brown, 757 F.3d 834, 842–43 (9th Cir. 2014). However, the Court need not decide whether the rule in Heck bars all of Plaintiff's claims. Defendants' Motion did not

---

[3] New York Penal Law 70.45(3) provides that "[t]he board of parole shall establish and impose conditions of post-release supervision in the same manner and to the same extent as it may establish and impose conditions in accordance with the executive law upon persons who are granted parole or conditional release." It also establishes an identical administrative process for revoking parole, conditional release, or post-release supervision. Id. (referencing N.Y. Exec. Law § 259-i(3) & (4)).

7

address Heck and, in any event, there are independent grounds to dismiss the claims in the Amended Complaint.

**B. Merits**

*1. Personal Involvement*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)). The fact that a defendant supervised or managed officials who may have violated the plaintiff's rights does not establish he or she was personally involved in the violation. See Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). A prison official may only be held liable if he or she participated directly in the alleged event, learned of the inmate's complaint and failed to remedy it, created policy that harmed the inmate, or acted with gross negligence in managing subordinates. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff alleges that his post-release supervision was imposed and revoked because of "policy written and/or enforced by" Defendants. Am. Compl. at 2, 3. However, as explained in more detail below, he does not describe any specific policy or custom of imposing conditions or revoking release without reasonable justification or due process. Such "conclusory, unsupported allegations of . . . the existence of a policy are "simply insufficient to establish liability of supervisory prison officials

8

under §1983." Parris v. N.Y. State Dep't Corr. Servs., 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013).

Therefore, Plaintiff's claims for damages against both Defendants must be dismissed.[4]

### 2. *Challenge to the Practice of Post-Release Supervision*

Plaintiff does assert that post-release supervision and its revocation are unconstitutional practices. Am. Compl. at 4.[5] He alleges that Defendants "create and enforce the policies that administratively change the sentences of inmates and those who are on post-release supervision," by "reclaiming custody after the legal expiration of a custodial sentence" "after courts ruled that the [DOCCS] does not have the authority to alter a judicial sentence." Id.[6] However, supervised release subject to reasonable conditions, as part of a criminal sentence, is routine and constitutional, as is its revocation pursuant to adequate procedures. As the Second Circuit noted in Birzon v. King, "when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is

---

[4] As the court concluded on November 21, 2017, damages claims against state officials in their official capacities are also barred by the doctrine of sovereign immunity under the Eleventh Amendment. See Dkt. Nos. 11 ("November 21, 2017 Order") at 2; see also Dkt. No. 8 ("October 18, 2017 Report and Recommendation") at 7.

[5] Although Plaintiff's general challenge to the practice of post-release supervision is his "Fourth Claim," the Court is addressing it first. Am. Compl. at 4.

[6] Plaintiff may be referring to Earley v. Murray, 451 F.3d 71, 76 (2d Cir. 2006)("Early II"), in which the Second Circuit held it was unconstitutional for the DOCCS to administratively impose a term of post-release supervision in cases where N.Y. Penal Law 70.45 required it but the sentencing judge did not impose it. "[O]ffenders on whom the Department imposed or executed post-release supervision terms after the policy was held unconstitutional in Earley II can bring the constitutional claims against the individuals who were responsible for the illegally imposed terms." Nobles v. Gonzalez, No. 18-CV-0680, 2018 WL 1459467, at *2 (E.D.N.Y. Mar. 23, 2018)(citing Betances v. Fischer, 837 F.3d 162, 170 (2d Cir. 2016)). However, Plaintiff does not allege his post-release supervision term was imposed by a DOCCS official and not his sentencing judge.

9

protected from further criminal acts by the parolee." 469 F.2d 1241, 1243 (2d Cir. 1972). Therefore, "[a]lthough a parolee should enjoy greater freedom in many respects than a prisoner, . . . [the] Government may . . . impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release." Id. Post-release supervision, as a sentence of supervised release commencing after a prison term expires, is "virtually indistinguishable [from probation and parole] for purposes of due process analysis." United States v. Carlton, 442 F.3d 802, 807 (2d Cir. 2006). Accordingly, Plaintiff's general challenge to the practice of post-release supervision must be dismissed.

> 3. *Challenge to Plaintiff's Conditions of Release (First, Fourth, and Fourteenth Amendments)*

Nevertheless, Plaintiff argues that the government violated his constitutional rights under the First, Fourth, and Fourteenth Amendments when it imposed conditions on his post-release supervision. The Fourteenth Amendment requires that, before the government deprives a person of liberty, it must provide "notice and opportunity for a hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971). However, individuals on parole and other forms of supervised release, who were lawfully convicted of a crime and "properly subject[] to . . . restrictions not applicable to other citizens," are only entitled to "conditional liberty properly dependent on observance of special parole restrictions." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Therefore, courts in the Second Circuit disagree on whether the Constitution entitles parolees and other individuals under post-release supervision to *any* procedural safeguards when the state imposes conditions on their release.[7] Nevertheless, Plaintiff

---

[7] Compare Behn v. Brown, No. 16-CV-0213, 2016 WL 3562077 (N.D.N.Y. June 24, 2016); Maldonado v. Fischer, No. 11-CV-1091, 2012 WL 4461647, at *4 (W.D.N.Y. Sept. 24, 2012); and Robinson v. New York, 09-CV-455, 2010 WL 11507493, at *5-6 (N.D.N.Y. Mar. 26,

alleges his conditions of post-release supervision implicate his First Amendment right to freedom of speech and association, his Fourth Amendment right to be free from unreasonable searches, and his Fourteenth Amendment right to maintain a relationship with his children. See Opp'n at 7–19; see also Exhibits at 2. These rights require procedural protection; the state must give a supervisee notice and an opportunity to be heard before it can impose conditions of release that abridge them. See United States v. McGeoch, 546 F. App'x. 44, 48–49 (2d Cir. 2013) ("Absent an individualized inquiry into whether [the defendant's] sexual proclivities pose a threat to his sons . . . the imposition of a harsh condition of supervised release that either prohibits interaction with his children or makes such interaction subject to supervision by a person approved of by the probation officer violates [the defendant's] due process rights."); see also Doe v. Annucci, No. 14-CV-2953, 2015 WL 4393012, at *14 (S.D.N.Y. July 15, 2015)(finding plausible claim that prohibiting parolee from contacting son without giving parolee notice and opportunity to be heard violated his due process rights).

However, Plaintiff's Amended Complaint and supporting documents do not allege his conditions of release were imposed without adequate procedures. He provides no facts regarding how the conditions were imposed, what notice he received, or whether he had an opportunity to be heard concerning them. Therefore, he does not state a claim that procedural due process was violated when the conditions were imposed. See Twombly, 550 U.S. at 570.

Regardless of the procedures used to impose them, conditions of release that restrict speech, family relationships, or the right to be free from unreasonable searches must be "reasonably and necessarily related" to the "'legitimate interests of the parole regime,' such as

---

2010) with Pollard v. U.S. Parole Com'n, No. 15-CV-9131, 2016 WL 3167229, at *4 (S.D.N.Y. June 6, 2016) and Singleton v. Doe, 210 F. Supp. 3d 359, 373 (E.D.N.Y. 2016).

'rehabilitation' and 'protection of the public,'" and "tailored in light of the conduct for which [the individual] was convicted." Trisvan v. Annucci, 284 F. Supp. 3d 288, 297 (E.D.N.Y. 2018) (citing Birzon, 469 F.2d at 1243); see also United States v. Lifshitz, 369 F.3d 173, 192 (2d Cir. 2004) (applying Fourth Amendment balancing test to assess whether condition requiring defendant's consent to monitoring of his computer usage bore a "close and substantial relation" to interests of probation system); Yunus v. Robinson, No. 17-CV-5839, 2018 WL 3455408, at *30–32 (S.D.N.Y. June 29, 2018) (concluding restriction on cell phone, computer, and internet use was not "narrowly tailored" to parolee's criminal history and therefore violated First Amendment); Doe v. Lima, 270 F. Supp. 3d 684, 702-06 (S.D.N.Y. 2017) (holding that Fourteenth Amendment required restriction on parolee's contact with children to be "narrowly tailored to serve a compelling governmental interest" and to a risk defendant posed to his child) (citing United States v. Myers, 426 F.3d 117, 128 (2d Cir. 2005)(Sotomayor, J.)).

However, Plaintiff provides no factual basis to conclude that any of his conditions are unjustified. Even the most burdensome of Plaintiff's conditions of release could be reasonable if they are tailored to the circumstances of his convicted offense, his criminal history, and his pertinent characteristics. For example, in McGeoch, the Second Circuit suggested that a condition of supervised release could constitutionally prohibit the defendant from contacting his children in certain circumstances, though it found the sentencing judge had not made the required individualized findings to do so in that particular case. See 546 F. App'x. at 48–49. In United States v. Reeves, the court stated that it had "no doubt that in the appropriate circumstance a court . . . could require a defendant to notify third-parties of risks arising from defendant's criminal record, personal history, or characteristics," although it reversed a condition that was not reasonably related to risks defendant posed. 591 F.3d 77, 82 (2d Cir. 2010). In

Muhammad v. Evans, the district court found reasonable a condition requiring probationer to notify his probation officer of all intimate relationships he entered where he had a history of domestic violence. No. 11-CV-2113, 2014 WL 4232496, at *10 (S.D.N.Y. Aug. 15, 2014). And in United States v. Rock, the D.C. Circuit upheld a condition banning a sex offender from possessing a computer or going online without prior approval because the defendant had pled guilty to distributing child pornography over the internet. 863 F.3d 827, 830–32 (D.C. Cir. 2017). Like the plaintiff in Trisvan, Plaintiff does not allege any facts regarding the conduct for which he was convicted, or his history and characteristics, to explain "how or why [his] release conditions are not reasonably or necessarily related to legitimate state interests in light of" that conduct. Trisvan, 284 F. Supp. 3d at 289. Therefore, Plaintiff has not stated a plausible claim that his conditions of release unreasonably restrict his rights under the First, Fourth, or Fourteenth Amendments.

Courts in the Second Circuit have concluded that conditions prohibiting a parolee from being within 300 yards of "places where children congregate," and requiring him to "notify the probation department when he establishes a significant romantic relationship," which are comparable to two of Plaintiff's conditions, were unconstitutionally vague. Yunus, 2018 WL 3455408, at *2–29; Reeves, 591 F.3d at 80. "A special condition of parole that is so vague that a person of common knowledge must guess at its meaning will be struck down as void for vagueness." LoFranco v. U.S. Parole Com'n, 986 F. Supp. 796, 808 (S.D.N.Y. 1997), aff'd, 175 F.3d 1008 (2d Cir. 1999). Parole conditions must be "sufficiently clear to inform [the defendant] of what conduct will result in his being returned to prison." Id. In his 2015 letter to the governor of New York, Plaintiff asserted that his conditions were "vague, and/or open to be taken advantage of," and that he "live[d] in fear" of being "put back in prison because [he] said hi to

13

someone in a subway station or because [he] shopped at Walmart." Exhibits at 6, 10. However, Plaintiff's Amended Complaint did not put Defendants on notice that Plaintiff believed any of his conditions were too ambiguous to notify him of what conduct would violate them. Therefore, the Court does not construe the Amended Complaint as raising a claim that any of his conditions of release are unconstitutionally vague. However, Plaintiff may raise such a claim in a second amended complaint.

Therefore, Plaintiff does not state a claim that his conditions of release violated the First, Fourth, or Fourteenth Amendments or would do so if re-imposed.

      *4. Challenges to the Revocation of Plaintiff's Release (Fourteenth Amendment)*

In his second and third claims, Plaintiff alleges that DOCCS violated the Fourteenth Amendment because it revoked his release "without judicial intervention," based on an "administrative warrant," and therefore without "due process." Am. Compl. at 2. The Second Circuit "considers the constitutional protections [required] for revocation of supervised release to be the same as those afforded for revocation of parole or probation." United States v. Sanchez, 225 F.3d 172, 175 (2d Cir. 2000). These procedural protections include an opportunity to be heard, to present evidence and witnesses, to cross-examine adverse witnesses before a neutral arbitrator such as a parole board, and to receive a written statement of the reasons for the revocation. Id.; see also Morrissey, 408 U.S. at 482, 489. New York law also requires DOCCS to provide these safeguards when revoking parole or supervised release. N.Y. Exec. Law § 259-i(3)–(4).

Plaintiff does not allege that DOCCS violated New York law when it revoked his parole and later his post-release supervision. Rather, he alleges that DOCCS revoked his release without a judicial hearing. However, individuals on parole and supervised release, serving a sentence for a criminal conviction, do not "enjoy the full range of procedural safeguards associated with a

criminal trial." Sanchez, 225 F.3d at 176. As such, a neutral administrative officer, rather than a judge, may revoke parole or supervised release. See Morrissey, 408 U.S. at 486; Sanchez, 225 F.3d at 175. Therefore, Plaintiff does not state a valid Fourteenth Amendment claim regarding the revocations of his parole and post-release supervision.

        5. *Claims under the Fifth, Eighth, and Ninth Amendments*

In addition to his claims based on the First, Fourth, and Fourteenth Amendments, Plaintiff alleges that the conditions of his release and its revocation violate the Fifth, Eighth, and Ninth Amendments. Am. Compl. at 1–3. However, Plaintiff cannot rely on those provisions to sustain his Amended Complaint. The Fifth Amendment Due Process Clause, unlike that of the Fourteenth Amendment, "governs the conduct of the federal government and federal employees." Viteritti v. Inc. Vill. of Bayville, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011). It does not "regulate the activities of state officials or state actors," such as the defendants in this case. Id. Certain rights enumerated in the Fifth Amendment, including the right against self-incrimination and double jeopardy, are incorporated in the Fourteenth Amendment and, through it, constrain state governments and their agents. See Malloy v. Hogan, 378 U.S. 1, 6 (1964); Benton v. Maryland, 395 U.S. 784, 787 (1969). However, Plaintiff does not allege that Defendants violated any such right.

To establish a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must satisfy two criteria: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Good, 554 F.3d 255, 268 (2d Cir. 2009). "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Id. Under the

15

objective element, the punishment must "be incompatible with the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gambelle, 429 U.S. 97, 102 (1976). Punishment meets this standard only if it is "grossly disproportionate to the crime," United States v. Reingold, 731 F.3d 204, 211 (2d Cir. 2013), or "result[s] in the denial of 'the minimal civilized measure of life's necessities,'" Farmer v. Brennan, 511 U.S. 825, 834, 832 (1994). As explained earlier, Plaintiff does not allege enough facts to show that his post-release supervision, its conditions, or his present incarceration is disproportionate to his crime, which he does not describe. Nor do his allegations suggest that Defendants (or anyone else) "wonton[ly]" denied him "the minimal civilized measure of life's necessities," Singleton v. Doe, 210 F. Supp. 3d 359, 365 n.9 (E.D.N.Y. 2016), comparable to prison officials' failure to provide "adequate food, clothing, shelter, and medical care," Farmer, 511 U.S. at 832, 834. Therefore, Plaintiff does not state a claim under the Eighth Amendment, either.

Finally, the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action . . . [and] cannot serve as the basis for a § 1983 claim because such a claim must be based on the violation of a right guaranteed by the U.S. Constitution or federal law." Lloyd v. Lee, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008).

Accordingly, Plaintiff's remaining constitutional claims must also be dismissed.

### 6. *Claim of Negligent Misrepresentation*

In his Opposition, Plaintiff also raises a claim of negligent misrepresentation under New York law, Opp'n at 1, alleging that Annucci instructed Herzog to misrepresent that Plaintiff's conditions of release were "what most law abiding citizens live by each and every day," id. at 5. However, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the

16

existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information [imparted] was incorrect; and (3) reasonable reliance on the information." Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 74 (E.D.N.Y. 2017). Plaintiff does not allege that he relied on Herzog's statement in any way or was harmed as a result. Therefore, his claim for misrepresentation also lacks factual support and must be dismissed.

### C. Leave to Amend

After its liberal review of the Complaint, the Court is not able to discern either a factual or legal basis for this action. However, in light of Plaintiff's pro se status, the Court will afford him the opportunity to amend his claims. See Gomez v. U.S. Auto. Assoc. Fed. Savs. Bank, 171 F.3d 794, 796 (2d Cir. 1999) ("[A] pro se plaintiff who is proceeding in forma pauperis should be afforded [an] opportunity . . . to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, than an amended complaint would succeed in stating a claim.").

Should Plaintiff choose to submit a second amended complaint in response to this Memorandum-Decision and Order, he must, at minimum, state the facts on which he relies to support his claim that Defendants engaged in misconduct or wrongdoing that violated his constitutional rights, including facts regarding his underlying conviction and the process by which his post-release supervision, and its conditions, were imposed and revoked. Plaintiff is advised that any second amended complaint will completely replace the prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his second amended complaint by reference. Plaintiff is forewarned that, if he fails to submit a second amended

complaint within thirty days of the filing date of this Memorandum-Decision and Order, the Court will, without further order, dismiss this action without prejudice.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Defendants' Motion (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 17) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file a second amended complaint as directed above **within thirty days** from the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if Plaintiff fails to timely file a second amended complaint as directed above, the Clerk shall enter judgment indicating that this action is dismissed without prejudice for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED: September 21, 2018
Albany, New York

_[signature]_
Lawrence E. Kahn
U.S. District Judge