UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN NEWMAN,

                              Plaintiff,

    -against-                                    3:17-CV-0918 (LEK/DEP)

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

**DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff, a convicted state prisoner, filed this case on August 21, 2017 after the New York Department of Corrections and Community Supervision ("DOCCS") revoked his post-release supervision and returned him to prison. Dkt. Nos. 1 ("Complaint"), 17 ("First Amended Complaint"). He alleged that his conditions of post-release supervision and its revocation were unconstitutional. After the Court dismissed his First Amended Complaint for failure to state a claim, Dkt. No. 45 ("September Order"), Plaintiff filed his Second Amended Complaint, Dkt. No. 52. On October 10, 2018, the Honorable Daniel E. Peebles, U.S. Magistrate Judge,[1] issued a Report-Recommendation screening it for sufficiency under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Dkt. No. 53 ("Report-Recommendation"). He recommends that the Court dismiss this case without giving Plaintiff another chance to replead his clams. Id. at 2.

For the reasons described below, the Court adopts the recommendation to dismiss Plaintiff's damages claims, but finds that his claims for injunctive relief survive and require a

---

[1] This case was since reassigned to the Honorable Miroslav Lovric, U.S. Magistrate Judge. Dkt. No. 61 ("Reassignment Order").

response. In addition, the Court consolidates this case with Newman v. Stanford, Case No. 19-CV-118, which involves the same operative facts and similar claims, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Finally, considering the complexity of the legal issues presented in this case, the Court requests counsel to represent Plaintiff in both consolidated cases under 18 U.S.C. § 3006A(a)(2)(B).

## III. LEGAL STANDARD

The Report-Recommendation explains the standards for reviewing a pleading under §§ 1915(e)(2)(B) and 1915A, which require a complaint to "plead enough facts to state a claim for relief that is plausible on is face," Wright v. Rensselaer Cty. Jail, No. 18-1058-PR, 2019 WL 2537523 (2d Cir. June 20, 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), including facts demonstrating that the plaintiff has standing to invoke federal jurisdiction, Zaleski v. Burns, 606 F.3d 51, 53 (2d Cir. 2010). As Plaintiff objected to the Report-Recommendation, the Court will apply those standards de novo. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."); accord 28 U.S.C. § 636(b)(1)(c).

## III. FACTS AND PROCEDURAL HISTORY

The factual allegations in the Second Amended Complaint elaborate on the First Amended Complaint, which is summarized in the September 2018 Order. As required at this stage, the Court takes those facts as true and draws all reasonable inferences in Plaintiff's favor. Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019).

Plaintiff was convicted in New York State court of third degree rape, third degree criminal sexual act, and sexual abuse—charges stemming from two incidents involving eight and sixteen year-old minors in 2003 and 2008. Dkt. No. 54 ("Habeas Petition") at 1, 5; Second Am. Compl. at 1. On August 9, 2013, Plaintiff was released from prison and began a ten-year term of post-release supervision. Second Am. Compl. at 1. DOCCS imposed various conditions on his release; for example, he could not contact children, including his own, or come within 1,000 feet of "places where children congregate" (with diverse examples including "malls" "bike trails," and "pool halls") without his parole officer's permission, and he could not establish "a relationship that can be described as, but not limited to . . . intimate, sexual, ongoing, social and/or indiscriminate sexual encounters with another person without notifying his parole officer and the third part(ies) of his criminal and sexual history." Id. at 2, 5–8.

On August 19, 2013, ten days after Plaintiff's release, DOCCS charged him with violating his post-release supervision by entering a public library. Id. at 2. His parole was revoked, and he spent three more years in prison. Id. During that time, he wrote letters to DOCCS Commissioner Anthony Annucci and New York Governor Andrew Cuomo complaining about his conditions of post-release supervision. Id. In reply to the letter to Annucci, Deputy Commissioner Thomas Herzog dismissed Plaintiff's concerns, stating that his release conditions were "the same as what most law abiding citizens live by each and every day." Id. Plaintiff was released on January 17, 2017, but he was charged with violating his conditions again one month later, on February 13, 2017, after parole officers conducted a "random visit" of his residence. Id. Plaintiff suggests that the relevant conditions of post-release supervision were the same during both of his brief periods of supervised release. Id. at 2, 5–8, 15–18.

When Plaintiff filed this case on August 21, 2017, he was still in prison. Compl. The September Order dismissed his First Amended Complaint because: (1) Heck v. Humphrey, 512 U.S. 477 (1994), barred the § 1983 claims challenging his revocation; (2) he failed to allege that the named defendants were personally involved in a violation of his constitutional rights; (3) he did not provide enough information about his convicted offense, criminal history, or pertinent characteristics to show that his conditions of post-release supervision were constitutionally unreasonable; and (4) his remaining claims lacked any basis in his factual allegations. Sept. 2018 Order at 5–18. However, the Court gave Plaintiff a chance to file this Second Amended Complaint to cure the defects. Id. at 17–18. That pleading renews the claims, described in the September 2018 Order, alleging that Plaintiff's conditions of release violate his constitutional rights under the First, Fourth, and Fourteenth Amendments. Sept. 2018 Order at 10–14.[2]

On January 2, 2019, after the Magistrate Judge issued the Report-Recommendation, Plaintiff filed a Motion for a Writ of Habeas Corpus making essentially the same claims challenging his conditions of release. Dkt. No. 54 ("Habeas Petition"). He attached a DOCCS "Parole Board Release Decision Notice" dated December 12, 2018. Dkt. No. 54 at 5–11 ("Release Notice"). The Release Notice listed a number of conditions of release, including only some of the conditions imposed earlier. Dkt. No. 54 at 5–11 ("Release Notice"). The Habeas

---

[2] Plaintiff does not appear to renew his previous claims under the Fifth, Eighth, and Ninth Amendments or his challenge to the revocation of his release. See Opperisano v. P.O. Jones, 286 F. Supp. 3d 450, 455, 462 (E.D.N.Y. 2018) (holding that Heck barred state prisoner's challenge to parole revocation because he could have brought a habeas action during the year he was in prison as a result of the revocation, but he did not). He focuses instead on his conditions of post-release supervision.

Petition indicated that Plaintiff would be released "back onto post-release supervision on or before 02/13/2019." Habeas Pet. at 1.

The Magistrate Judge directed the Clerk to open a new action concerning the Habeas Petition, which was also assigned to this Court. Dkt. No. 59 ("January Text Order"); see also Newman v. Stanford, Case No. 19-CV-118 ("Habeas Docket"). Filings in that case indicate that Plaintiff was indeed released on February 13, 2019. Habeas Dkt. No. 4 ("February 2019 Order") at 1–2. After the Court dismissed the Petition for failure to plead exhaustion of state remedies, Plaintiff filed an Amended Petition, Habeas Dkt. No. 6 ("Amended Petition").

In the Amended Petition, Plaintiff alleges that on February 14, 2019 (the day after his release), "upon reporting to his parole officer, [Plaintiff] was surprised and forced to sign an additional 70 conditions without notice" or "an opportunity to be heard." Id. at 2. He attached those conditions to his Amended Petition. Dkt. No. 6-3 ("2019 Special Conditions").

The 2019 Special Conditions included most of his previous (2013 and 2017) conditions,[3] but added restrictions stating that he may not, "without [the] written permission of [his] parole officer:" "reside with any domestic, intimate, dating, or girlfriend/boyfriend without written permission of [his] parole officer;" must "immediately advise" his parole officer of "any dating, intimate, sexual, or boyfriend/girlfriend type of relationship [he] become[s] involved in, or

---

[3] There is at least one exception: DOCCS seems to have dropped the vague condition that Plaintiff get permission before establishing "a relationship that can be described as, but not limited to . . . intimate, sexual, ongoing, social and/or indiscriminate sexual encounters with another person without notifying the third part(ies) of his criminal and sexual history." See Am. Pet. at 3–17. But it retained the other conditions the Court flagged in the September 2018 Order, including that Plaintiff not contact minors (including presumably his own children) and stay at least 300 yards away from "places where children congregate" with "bike trails" and "pool halls" among the examples. Compare Am. Pet. at 13 and Spec. Cond. at 6 with Sept. 2018 Order at 3–4.

5

stop[s] being involved in" and provide "the person's name, date of birth, address and phone number;" and may not "have any person" with whom he has such a relationship "in [his] residence, nor will [he] be in their "residence or company . . . during [his] curfew hours." Id. at 7–8; 2019 Spec. Conds. at 4. He must also notify his parole officer when he "establish[es] a relationship" and must "inform the other party of [his] criminal history concerning rape, sexual abuse, in the presence of [his] parole officer." Am. Pet. at 9; 2019 Spec. Conds. at 5. He must carry "a log book truthfully detailing all of [his] daily events to include dates, times, places with addresses, vehicle information and people with names for review by [his] parole officer at any given time." Am. Pet. at 8–9; Spec. Conds. at 5. And he must not "participate in any sexual fetishes." Am. Pet. at 12; Spec. Conds. at 6.

DOCCS revoked Plaintiff's release again on February 22, 2019, concluding that he violated his conditions a third time. Habeas Dkt. No. 9 ("April 2019 Letter"). Plaintiff last reported that he was incarcerated at Broome County Jail. Id. It appears he has since been transferred to Mid-State Correctional Facility. See Dkt. No. 62 (indicating that July 2, 2019 mail from the Court enclosing the Reassignment Order was returned from Broome County Jail as undeliverable).[4] Plaintiff is ordered to confirm his current address and reminded of his obligation to update the Court when his address (or institution of incarceration) changes.

## II. DISCUSSION

### A. Justiciability

Before assessing the merits of Plaintiff's claims, the Court must address its power to hear

---

[4] Inmate Look-up, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (Results for "Newman, John H." indicating he is housed at "Midstate").

those claims. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (citation omitted)).

Under Article III of the Constitution, federal courts may only hear "real and substantial controversies," and may not issue "opinion[s] advising what the law would be upon a hypothetical state of facts." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). Thus, to show that he has standing "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–181 (2000). A threatened injury is "imminent" if it is "'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). "[S]tanding . . . must exist at the commencement of the litigation," and Plaintiff must "allege facts that affirmatively and plausibly suggest that [he or she] has standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55 (2d Cir. 2016).

Though not a constitutional requirement, the Court must abstain from deciding a case if the issues would "be better decided later and . . . the parties will not have constitutional rights undermined by the delay." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687–88 (2d Cir. 2013) (quoting Simmonds v. I.N.S., 326 F.3d 351, 357 (2d Cir. 2003)). This "prudential ripeness" doctrine is "a tool that courts may use to enhance the accuracy of their decisions and to

7

avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." Id. (citation omitted). To decide whether adjudication would be premature, courts must consider: (1) "the fitness of the issues for judicial decision" (i.e., whether they "are contingent on future events or may never occur"); and (2) "the hardship to the parties of withholding court consideration" (i.e., "whether the challenged action creates a direct and immediate dilemma for the parties"). Id. (citations omitted). "Ripeness should be decided [based on] all the information available to the court. Intervening events that occur after" the filing of the complaint "should be included, just as must be done with questions of mootness." 13B Fed. Prac. & Proc. Juris. § 3532.7 (3d ed. Apr. 2019 update); see also Hargrave v. Vermont, 340 F.3d 27, 34 (2d Cir. 2003) ("[I]t is irrelevant whether the case was ripe for review when the complaint was filed.") (citation omitted).

The related doctrine of "mootness" operationalizes the rule that "an actual controversy must [exist] at all stages of review, not merely at the time the complaint is filed;" if "an intervening circumstance" deprives the case of the requisite concreteness or imminence "at any point during litigation, the action can no longer proceed and must be dismissed as moot." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71–72 (2013) (citing Lewis, 494 U.S. at 477–478).[5]

---

[5] There are two caveats to the mootness rule. First, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 189. Second, a claim is not moot if it is "capable of repetition, yet evading review," which applies "where the following two circumstances [are] simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to

The Court previously instructed Plaintiff that "[t]o establish standing in this case, [he] must state in his second amended complaint the reasons he believes that the defendants are likely to impose the challenged condition(s) after he is released, such that the Court may appropriately decide whether those conditions are unconstitutional before Plaintiff is released." Dkt. No. 49 ("October 2018 Text Order"). Plaintiff filed his Second Amended Complaint while incarcerated for violating his release conditions, but it did not comply with the Court's directive; the pleading did not spell out why Plaintiff believed DOCCS was likely to reimpose the challenged conditions. For example, it did not indicate if Plaintiff would be released soon (or many years from now), or whether he would be again be under DOCCS' supervision when released.

Nevertheless, for the purposes of this initial review only, the Court finds that Plaintiff had standing to challenge his conditions of release when he filed his Amended Complaint. By that time, DOCCS had evidently imposed the challenged conditions twice—once in 2013 and once in 2017.[6] Accordingly, it appeared that DOCCS would likely impose the same conditions again upon Plaintiff's release. There was no indication that Plaintiff would be incarcerated for so long that DOCCS would deem him rehabilitated and drop the challenged conditions, or that technological changes would "make it impossible to evaluate the condition[s'] necessity before they took effect." United States v. Randazzo, 763 F. App'x 140, 141 (2d Cir. 2019) (finding

---

the same action again.'" Spencer v. Kemna, 523 U.S. 1, 17 (1998).

[6] The Court notes that even if Plaintiff lacked standing when he filed his first two complaints, the Second Amended Complaint could cure the defect. See Scahill v. D.C., 909 F.3d 1177, 1184 (D.C. Cir. 2018) (holding that "a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint") (citing Travelers Ins. Co. v. 633 Third Assocs., 973 F.2d 82, 87 (2d Cir. 1992) (giving plaintiff opportunity to amend complaint to cure statutory standing defect)).

9

appeal challenging technology-dependent conditions unripe when defendant would not be released for many years). Indeed, Plaintiff was released on February 14, 2019 on substantially the same conditions as before.[7]

The Magistrate Judge concluded that even if Plaintiff had standing to challenge his anticipated conditions of release when he filed his Second Amended Complaint, Plaintiff's February 22, 2019 arrest mooted his claims. R&R at 13 ("[S]ince [P]laintiff is now confined to a DOCCS facility" and "is no longer subject to the conditions of which he complains in his complaint . . . any cause of action seeking an injunction directing the DOCCS to relieve [P]laintiff of any supervised release conditions and/or SORA requirements has been rendered moot."). The Court is unwilling to adopt this conclusion at this early stage. DOCCS' repeated use of the same conditions portends their re-imposition upon Plaintiff's next release, and the Court discerns no reason to believe the relevant facts will change before Plaintiff is released and "expose[d] . . . to actual arrest or prosecution" under conditions that he claims "deter[ ] the exercise of his constitutional rights." United States v. Loy, 237 F.3d 251, 257 (3d Cir. 2001) (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)). Thus, Plaintiff's claims challenging those conditions remain ripe and are not moot. Id. at 257–58 (finding pre-release challenge to allegedly vague restriction on pornography access to be ripe because "nothing about his contention [would] change between now and . . . [the challenger's] release from prison").[8]

---

[7] As discussed earlier, the one exception—the former, broad restriction on "intimate, sexual, ongoing, social . . . relationship[s]"—was replaced by a slew of similar (albeit *somewhat* clearer) restrictions on Plaintiff's intimate relationships. See infra at 5–6 & n.3.

[8] That said, if Plaintiff means to challenge the conditions that were not described in his Second Amended Complaint, he should move to amend or supplement that pleading.

B. Merits

The Magistrate Judge correctly concluded that Plaintiff's claims for damages fail because there are no allegations showing that the named defendants were personally involved in any constitutional violation. R&R at 10–12. Plaintiff asserts that his letter of complaint to Annucci, and the dismissive response from Herzog, demonstrates those officials' "deliberate indifference" to his unconstitutional release conditions and therefore makes them responsible for when the offending conditions were reimposed. Second Am. Compl. at 8. However, Annucci referred Plaintiff's second letter of complaint to Jeff McKoy, a Deputy Commissioner for Program Services, who informed Plaintiff that "the Parole Board Commissioners are responsible for all final determinations of parole conditions" and that he should "discuss the possible removal of particular conditions with [his] assigned parole officer" upon release. Dkt. No. 1-1 at 11 ("McKoy Letter"). Annucci and Herzog were not "deliberately indifferent" for failing to "intervene in advance" of the parole board's "established procedure" for determining whether to impose the same conditions upon Plaintiff's release, or for directing Plaintiff to raise his complaints with his parole officer in the first instance. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see also Mateo v. Fischer, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (explaining that referring complaints to subordinates to be handled through an established process does not make an executive official personally involved in the wrongdoing underlying the complaint).

In addition, the Court has examined Plaintiff's state-law claim for common-law misrepresentation and concluded that it, too, fails to cure deficiencies identified in the September 2018 Order: Plaintiff still does not explain how Herzog's alleged misrepresentation (that Plaintiff's conditions are the same as "what most law abiding citizens live[ ] by") caused him

11

injury. Second Am. Compl. at 4; see also Sept. 2018 Order at 16–17. Plaintiff's claims challenging the overall practice of post-release supervision also remain unmeritorious. See Sept. 2018 Order at 9–10.

However, the Court parts ways with the Magistrate Judge in one respect. The Magistrate Judge also concluded that Heck v. Humphrey bars Plaintiff's request to enjoin Defendants and their agents from re-imposing and enforcing the challenged conditions of release. As the Court noted in its September 2018 Order, the federal courts are divided over whether Heck applies to § 1983 claims challenging conditions of supervision. See Sept. 2018 Order at 7. Moreover, now that Plaintiff has clarified that his criminal history does not concern his own children or computer technology, Plaintiff raises legitimate constitutional concerns regarding several conditions of his release—including those prohibiting him from contacting his children, being near "places where children congregate" (which may be unconstitutionally vague), or possessing a computer or going on the internet. See Sept. 2018 Order at 10–14 (explaining the constitutional issues such conditions raise). The Court declines to resolve these thorny issues without briefing. See Harnage, 916 F.3d at 141 (explaining that the Second Circuit will reverse a sua sponte dismissal if "a liberal reading of the complaint gives any indication that a valid claim might be stated"); Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (warning courts to exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond").[9]

---

[9] Annucci, at least, is a proper defendant to the extent that Plaintiff seeks an injunction against parole officers from implementing conditions in an unconstitutional manner, but perhaps not to the extent he seeks to prevent the parole board from imposing conditions in the first instance, Doe v. Annucci, No. 14-CV2953, 2015 WL 4393012, at *21 (S.D.N.Y. July 15, 2015). Tina Stanford is the Chairperson of the New York Board of Parole. See Habeas Dkt. No. 4 at 1.

Accordingly, the Court finds that Plaintiff's constitutional claims seeking injunctive relief under § 1983 survive sua sponte review and require a response.

### III. CONSOLIDATION

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a); see also Rule 12, Rules Governing 2254 Proceedings (permitting the Court to apply the Federal Rules of Civil Procedure in cases brought under § 2254). Rule 42(a) "should be prudently employed as a valuable and important tool of judicial administration . . . to expedite trial and eliminate unnecessary repetition and confusion . . . when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Devlin v. Transp. Commc'ns Int'l. Union, 175 F.3d 121, 130 (2d Cir. 1999) (citations omitted). As indicated earlier, Plaintiff initially filed his Habeas Petition in this action, Dkt. No. 54, and the Magistrate Judge directed that a new action, Newman v. Stanford, Case No. 19-CV-118, be opened to litigate the Habeas Petition, Jan. 2019 Text Order. However, after reviewing both the Second Amended Complaint in this case and the Amended Petition in the Habeas Action, the Court now finds that the two cases are based on the same facts, raise the same constitutional claims, and their consolidation would not prejudice any party. Therefore, this action is consolidated with Newman v. Stanford, Case No. 19-CV-118.

### IV. APPOINTMENT OF COUNSEL

The Court previously denied Plaintiff's request for appointed counsel pending the filing of his Second Amended Complaint. Dkt. No. 49 ("October 2018 Text Order"). Plaintiff renews his request in his Objections, and his recent filings persuade the Court to revisit the issue.

18 U.S.C. § 3006A(A)(2)(B) provides that "[w]henever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under sections 2241, 2254, or 2255 of title 28." To determine whether to appoint counsel under that provision, the Court must "determine whether the indigent's position is likely to be of substance"—that is, whether he "appears to have some chance of success." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Then, it must consider "secondary criteria" such as the need for counsel to investigate facts, cross-examine witnesses, or brief complex legal issues. Id. at 61–62.

Plaintiff is "financially eligible" for appointed counsel; he is proceeding IFP and unable to afford a lawyer. Dkt. No. 8 ("October 2017 Order") at 3–4. He is also "seeking relief under section[ ] . . . 2254," in addition to § 1983. See Newman v. Stanford, Case No. 19-CV-118, Dkt. No. 4 ("February Order") at 2. Furthermore, as indicated earlier, his claims have at least "some chance of success." Hodge, 802 F.2d at 61–62; see infra at 12. Granted, they require little factual investigation and will not turn on credibility issues necessitating professional cross-examination. See Hodge, 802 F.2d at 61–62. But the legal issues—including whether Plaintiff has standing to challenge his future release conditions despite his incarceration, and whether Heck requires him to use habeas corpus instead of § 1983—are complex, controversial, and implicate weighty questions of federalism and the separation of powers. See Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 66 (1976) (Brennan, J. concurring) (characterizing standing as "an area of incredible complexity" and "a complicated specialty of federal jurisdiction"); Johnson v. Mondrosch, 586 F. App'x 871, 874 (3d Cir. 2014) (describing the circuit split over "whether a state parolee may challenge a condition of parole via a § 1983 action").

Accordingly, Plaintiff's request for appointment of counsel is granted. Counsel will be appointed to represent Plaintiff in both this case and Case No. 19-CV-118, which are now consolidated, because the issues in both cases are intertwined. Counsel should be prepared to respond to any motion to dismiss the Second Amended Complaint and may move to supplement or further amend the complaint if he deems it appropriate.[8]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 53) is **ADOPTED in part and REJECTED in part**; and it is further

**ORDERED**, that Plaintiff's claims seeking damages against Annucci and Herzog, including his claims under New York law, are **DISMISSED without leave to amend** for the reasons stated herein and in the Report-Recommendation;[9] and it is further

**ORDERED**, that Plaintiff's constitutional claims challenging his conditions of post-release supervision **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED**, that this action is **CONSOLIDATED** with Newman v. Stanford, Case No. 19-CV-118. All future filings shall be made in this case, No. 17-CV-918, which shall be designated as the Lead Case; and it is further

---

[8] As noted in a separate order issuing today in the Habeas Action, if Plaintiff intends to pursue his habeas claims, he should file a consolidated amended complaint including both his habeas and § 1983 claims and the grounds for each, stating when and how he exhausted his state remedies for purposes of the habeas claims.

[9] This ruling applies only to the damages claims against Annucci and Herzog and does not preclude damages claims against Plaintiff's parole officers, for example. See Doe, 2015 WL 4393012, at *9.

**ORDERED**, that John S. Wallenstein Esq., 1100 Franklin Ave. # 100, Garden City, New York 11530, is appointed under 18 U.S.C. § 3006A(a)(2)(B) to represent Plaintiff/Petitioner in these consolidated cases. The Clerk is directed to prepare the appropriate CJA 20 form (Appointment of and Authority to Pay Court Appointed Counsel) to accomplish the foregoing; and it is further

**ORDERED**, that Plaintiff shall, as soon as practicable but no later than **thirty days** from the date of this Decision and Order, file a letter confirming his current address; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	July 12, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge