UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN NEWMAN,

                              Plaintiff,

        -against-                                    3:17-CV-0918 (LEK/ML)

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff, a convicted state prisoner, filed this action under 42 U.S.C. § 1983 against

defendants Anthony Annucci and Thomas Herzog (collectively, "Defendants"). Dkt. Nos. 1

("Complaint"); 17 ("First Amended Complaint"); 52 ("Second Amended Complaint"). After

completing his prison sentence, Plaintiff was placed on post-release supervision with several

conditions of release. Second Am. Compl. at 1–2. However, the New York Department of

Corrections and Community Supervision ("DOCCS") revoked Plaintiff's post-release

supervision after he violated the conditions of release, which resulted in his re-incarceration. Id.

Plaintiff alleges that his conditions of post-release supervision were unconstitutional, and he

requests injunctive relief. Id. at 10.

Now before the Court is Defendants' motion to dismiss filed pursuant to Federal Rules of

Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). Dkt. No. 78-1 ("Motion to Dismiss"). Plaintiff

opposes this motion, Dkt. No. 85 ("Opposition"), and Defendants have filed a reply, Dkt. No. 86

("Reply").

For the following reasons, the Court denies the Motion to Dismiss.

## II.     BACKGROUND

### A.  Factual Background

At this stage, "[t]he Court draws all facts, which are assumed to be true, from the Complaint." Maddison v. Comfort Sys. USA (Syracuse), Inc., No. 17-CV-359, 2019 WL 4805328, at *1 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (citing Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012)). Additionally, "[f]or purposes of a motion to dismiss, . . . a complaint . . . include[s] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . ." Sprole v. Underwood, No. 18-CV-1185, 2019 WL 4736241, at *3 (N.D.N.Y. Sept. 27, 2019) (Kahn, J.) (citing Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000)).

The factual allegations in the Second Amended Complaint elaborate on those detailed in the First Amended Complaint and are summarized in the Court's opinion reviewing the sufficiency of Plaintiff's Second Amended Complaint. Dkt. No. 64 ("July Order").

Plaintiff was convicted in New York State court of third-degree rape, third-degree criminal sexual act, and sexual abuse—charges stemming from two incidents involving eight- and sixteen-year-old minors in 2006 and 2009, respectively.[1] Second Am. Compl. at 1; July Order at 3. Plaintiff was sentenced to a total of five years and six months in prison and ten years of post-release supervision. Second Am. Compl. at 1. On August 9, 2013, Plaintiff was released from prison and began a term of post-release supervision. Id. DOCCS imposed various conditions on his release; for example, he could not contact children, including his own, or come

---

[1] After Plaintiff's 2006 conviction, he was sentenced to six months in jail with ten years of probation. Second Am. Compl. at 1. Upon release from jail in 2008, while on probation, Plaintiff was charged with having "sexual intercourse" with a sixteen-year-old. Id.

within 1,000 feet of "places where children congregate"[2] without his parole officer's permission, and he could not establish "a relationship that can be described as, but not limited to . . . intimate, sexual, ongoing, social, and/or indiscriminate sexual encounters with another person without notifying his parole officer and the third part(ies) of his criminal and sexual history." Id. at 2, 5–8.

On August 19, 2013, ten days after Plaintiff's release, DOCCS charged him with violating his post-release supervision by entering a public library. Id. at 2. Plaintiff's parole was revoked, and he spent three more years in prison. Id. During that time, Plaintiff wrote letters to DOCCS Commissioner Anthony Annucci and New York Governor Andrew Cuomo complaining about his conditions of post-release supervision. Id. at 2, 12, 14–19, 26, 28. In reply to Plaintiff's letter to Annucci, DOCCS Deputy Commissioner Thomas Herzog dismissed Plaintiff's concerns, stating that his release conditions were "the same as what most law-abiding citizens live by each and every day." Id. at 11.

On January 17, 2017, Plaintiff was again released from prison and returned to parole. Id. at 2. However, one month later, on February 13, 2017, he was again charged with violating his conditions of supervised release after parole officers conducted a "random home visit" of his residence.[3] Id. Plaintiff alleges that the relevant conditions of post-release supervision were the same during both of his brief periods of supervised release. Id. at 2, 5–8, 15–18.

---

[2]  The list of forbidden destinations included "toy stores, parks, pet stores, playgrounds, malls, bike trails, video galleries, skate rinks, amusement parks, bowling alleys, poolhalls, etc." Second Am. Compl at 5.

[3]  Plaintiff does not indicate what the parole officers found during the home visit that constituted a violation of his conditions of parole.

On February 13, 2019, Plaintiff was once again released to parole. July Order at 5. Plaintiff alleges that on February 14, 2019 (the day after his release) "upon reporting to his parole officer, [Plaintiff] was surprised and forced to sign an additional 70 conditions without notice" or "an opportunity to be heard." Id. These conditions included most of his previous (2013 and 2017) conditions,[4] but added restrictions stating that Plaintiff could not, "without [the] written permission of [his] parole officer:" "reside with any domestic, intimate, dating, or girlfriend/boyfriend without written permission of [his] parole officer"; must "immediately advise" his parole officer of "any dating, intimate, sexual, or boyfriend/girlfriend type of relationship [he] become[s] involved in, or stop[s] being involved in" and provide "the person's name, date of birth, address and phone number"; and may not "have any person" with whom he has such a relationship "in [his] residence, nor will [he] be in their residence or company . . . during [his] curfew hours." Id. at 5–6. (internal quotation marks omitted). He was also required to notify his parole officer when he "establish[ed] a relationship" and had to "inform the other party of [his] criminal history concerning rape [and] sexual abuse, in the presence of [his] parole officer." Id. at 6. He had to carry "a logbook truthfully detailing all of [his] daily events to include dates, times, places with addresses, vehicle information and people with names for review by [his] parole officer at any given time." Id. And he was not permitted to "participate in any sexual fetishes." Id.

---

[4] There is at least one exception: DOCCS seems to have dropped the condition that Plaintiff get permission before establishing "a relationship that can be described as, but not limited to . . . intimate, sexual, ongoing, social and/or indiscriminate sexual encounters with another person without notifying the third part(ies) of his criminal and sexual history." July Order at 5 n.3. But it retained the other conditions, including that Plaintiff not contact minors (including, presumably, his own children) and stay at least 300 yards away from "places where children congregate." Id.

4

On February 22, 2019, DOCCS revoked Plaintiff's release a third time for violations of parole conditions.[5] Id. Plaintiff is currently in custody at Mid-State Correctional Facility, Dkt. No. 69 ("Change of Address"), and is scheduled to be released on October 22, 2020, *Inmate Look-up*, http://nysdoccslookup.doccs.ny.gov (DIN 10-B-0124) (last visited July 14, 2020).

### B. Procedural History

Plaintiff filed this case pro se on August 21, 2017, while he was in prison. Compl.; July Order at 1. The Court dismissed Plaintiff's First Amended Complaint[6] for failure to state a claim, but gave Plaintiff the opportunity to file a second amended complaint. July Order at 4. The Second Amended Complaint, filed on November 19, 2018, alleges that Plaintiff's conditions of release violate his constitutional rights under the First, Fourth, and Fourteenth Amendments.[7] Second Am. Compl.; July Order at 4. In the Second Amended Complaint, Plaintiff sought both money damages and injunctive relief from the conditions of parole. Second Am. Compl. at 10.

On December 26, 2018, the Honorable David E. Peebles, U.S. Magistrate Judge,[8] issued a Report-Recommendation reviewing the sufficiency of the Second Amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Dkt. No. 53 ("Report-Recommendation"). The Magistrate Judge recommended that the Court dismiss the case because Plaintiff had no claim for damages and his 2019 re-arrest had mooted his request for injunctive relief. Id. at 10–13.

---

[5]  Plaintiff, again, does not explain on what basis his parole was revoked.

[6]  Plaintiff amended his Complaint pursuant to FRCP 15(a)(1) before Defendants had been served, and the Court accepted the Amended Complaint for filing. Dkt. No. 16.

[7]  The Second Amended Complaint does not appear to renew Plaintiff's claims under the Fifth, Eighth, and Ninth Amendments, as alleged in the First Amended Complaint. July Order at 4 n.2; First Am. Compl at 2; Second Am. Compl.

[8]  This case was subsequently reassigned to the Honorable Miroslav Lovric, U.S. Magistrate Judge. Dkt. No. 61 ("Reassignment Order").

On January 2, 2019, after the Magistrate Judge issued the Report-Recommendation, Plaintiff filed a Petition for a Writ of Habeas Corpus making essentially the same challenges to his conditions of release. Dkt. No. 54 ("Habeas Petition"). The Magistrate Judge directed the Clerk to open a new action concerning the Habeas Petition, which was also assigned to this Court. Dkt. No. 59 ("January Text Order"); see also Newman v. Stanford, No. 19-CV-118, (N.D.N.Y. filed Jan. 22, 2019) ("Habeas Docket").

On July 12, 2019, the Court adopted the Magistrate Judge's recommendation to dismiss Plaintiff's damages claims, but rejected the recommendation to dismiss Plaintiff's claims for injunctive relief. July Order at 1–2. The Court found that Plaintiff's allegations were sufficient to avoid dismissal on mootness grounds at the sufficiency review stage, and that the claims required a response. Id. at 10, 13. In the July Order, the Court also consolidated this case with Newman v. Stanford, as both cases relied on the same facts, both cases raised the same constitutional claims, and consolidation would not prejudice any party. Id. at 13. Additionally, the Court granted Plaintiff's request for appointment of counsel; Plaintiff is now represented by John S. Wallenstein, Esq. Id. at 14–16.

On November 4, 2019, Defendants filed their Motion to Dismiss under FRCP 12(b)(1), arguing that the Court lacks jurisdiction because the case is moot, and under FRCP 12(b)(6), arguing that Plaintiff has failed to state a claim because he has an adequate remedy at state law. Mot. to Dismiss. Plaintiff filed his Opposition on December 3, 2019. Opp'n. On December 17, 2019, Defendants filed their Reply. Reply.

III.   **LEGAL STANDARD**

A.  **12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

6

when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 896 (2d Cir. 2012). The plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 65 (2d Cir. 2012).

**B.  12(b)(6)**

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[] . . . ." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted).

**IV.   DISCUSSION**

The Court begins with the jurisdictional issue: whether Plaintiff's request for injunctive relief is moot. Then the Court addresses whether Plaintiff has plausibly stated a claim for injunctive relief.

### A.  Mootness

"The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic levels by the terms of Article III of the Constitution, which state that they may hear only 'Cases' or 'Controversies.'" Russman v. Bd. of Educ. of the Enlarged City Sch. Dist. of Watervliet, 260 F.3d 114, 118 (2d Cir. 2001) (quoting U.S. Const. art. III, § 2, cl. 1). Under the doctrine of mootness, "an actual controversy must [exist] at all stages of review, not merely at the time the complaint is filed." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013). "For the 'case or controversy' requirement to be met, 'at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.'" Karim-Rashid v. N.Y. Dep't of Corr. and Cmty. Supervision, No. 16-CV-340, 2017 WL 9516822, at *4 (W.D.N.Y. Aug. 7, 2017) (quoting Russman, 260 F.3d at 118) If "an intervening circumstance" deprives the case of the requisite concreteness or imminence "at any point during litigation, the action can no longer proceed and must be dismissed as moot." Genesis, 569 U.S. at 72.[9] "A party seeking to have a case dismissed as moot bears a heavy burden." Student X v. N.Y.C. Dept. of Educ., No. 07-CV-2316, 2008 WL 4890440, at *12 (E.D.N.Y. Oct. 30, 2008) (quoting Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005)).

---

[9]  There are two caveats to the mootness rule. First, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 189 (2000). Second, a claim is not moot if it is "capable of repetition, yet evading review," which applies "where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will[ be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal quotation marks and citation omitted).

Defendants argue that Plaintiff's "claims for injunctive relief are moot and must be dismissed" because "Plaintiff has been reincarcerated and the conditions of parole release are no longer in effect." Mot. to Dismiss at 8. The Court disagrees.

To support their argument, Defendants rely principally on two cases: Robinson v. New York, 550 F. App'x 63 (2d Cir. 2014) and Maldonado v. Fisher, No. 11-CV-1091, 2013 WL 5487429, at *4 (W.D.N.Y. Sept. 30, 2013). But these cases are distinguishable. First, in Robinson, the plaintiff requested injunctive relief regarding the imposition of special conditions of parole. 550 F. App'x at 64. The court dismissed the plaintiff's claims as moot because his term of supervised release had terminated during appeal, and he was no longer subject to the conditions of parole. Id. But the expiration of the Robinson plaintiff's term of supervised release makes that case distinct from this one. In Robinson, because the term of supervised release had expired, there was no possibility of the challenged parole conditions being re-imposed, whereas here, Plaintiff will once again be subject to a term of supervised release. Specifically, Plaintiff is due to be released on October 22, 2020,[10] Opp'n at 5 n.1; Reply at 1 n.1, at which time, because he has not finished his ten-year term of supervised release, he will be subject to post-release supervision and parole conditions. Accordingly, Defendants' reliance on Robinson is misplaced, and Robinson does not establish that the current case is moot. See Lando v. Annucci, No. 18-CV-1472, 2019 WL 9045382, at *3 n.5 (N.D.N.Y. Nov. 25, 2019) (distinguishing Robinson

---

[10]  Defendants argue that it is unclear whether Plaintiff will be re-released to parole. Mot. to Dismiss at 7. However, Defendants have failed to meet their burden to demonstrate that Plaintiff will not be re-released to parole. Mot. to Dismiss; Reply; see Student, 2008 WL 4890440, at *12 (indicating that the burden is on the defendants to establish mootness).

from a case where the plaintiff was re-incarcerated for violating parole), report and recommendation adopted by No. 18-CV-1472, 2020 WL 1163857 (N.D.N.Y. Mar. 11, 2020).[11]

Maldonado, too, is inapposite. Maldonado held that a felony sex offender's request for injunctive relief was moot upon re-incarceration, because his parole status and conditions of parole were revoked as a matter of law following a new felony conviction. 2013 WL 5487429, at *4. Relying on this case, Defendants argue that Plaintiff's re-incarceration has mooted his claims because "when Plaintiff was reincarcerated in a DOCCS facility after violating his parole conditions, his parole status was revoked, the parole conditions he is now challenging were extinguished as a matter of law, and—at present—he is not subject to parole conditions." Reply at 5. Preliminarily, the Court notes that arguments raised for the first time in a reply brief are generally disregarded because the opposing party has no opportunity to respond. See, e.g., Hensel v. City of Utica, No. 15-CV-374, 2020 WL 1451579, at *12 (N.D.N.Y. Mar. 25, 2020) (Kahn, J.) ("[T]he Court declines to address this argument because Defendant first raised it in its Reply.").

Considering this argument nonetheless, the Court is unconvinced. As Plaintiff points out, in Maldonado, the plaintiff was re-incarcerated for committing a new felony, whereas here, Plaintiff was re-incarcerated for violating a condition of parole. Opp'n at 6. Despite Defendants' protests to the contrary, see Reply at 5 (arguing that whether Plaintiff was reincarcerated for a parole violation or for a new felony conviction "is a distinction without a significant difference"), this distinction matters. "Such a distinction is important because the statutes cited in

---

[11]  Similarly, another case Defendants cite, Gordon v. Semrug, No. 14-CV-324, 2017 WL 2241966, at *6 (W.D.N.Y. May 23, 2017), does not establish that the current case is moot because the plaintiff in that case finished his parole sentence and was no longer to subject to parole conditions. See Lando, 2019 WL 9045382, at *3 n.5 (distinguishing Gordon from a case where the plaintiff was re-incarcerated for violating parole conditions).

Maldonado supporting the proposition that Plaintiff's parole conditions were extinguished by operation of law deal specifically—and only—with the impact of post-release supervision after a conviction for a new felony." Lando, 2019 WL 9045382, at *4 (noting that "a person's 'post release supervision' is 'revok[ed]' in the event of a conviction of a new felony" and will be subject to a new sentence) (citing 9 N.Y.C.R.R. 8004.3(g); see also N.Y. Exec. L. § 259-i(3)(d)(iii) ("[W]hen a . . . parolee . . . has been convicted of a new felony committed while under [] supervision and a new indeterminate or determinate sentence has been imposed, . . . the inmate[s] release has been revoked on the basis of the new conviction . . . .").

By contrast, the provisions of New York law regarding re-incarceration for a parole violation, do not conclusively indicate that re-incarceration extinguishes parole conditions as a matter of law. Defendants contend that Plaintiff's conditions of parole are extinguished as a matter of law upon re-incarceration because "the parole board and parole officers retain discretion to impose [] conditions—or not—each time that plaintiff is re-released."[12] Reply at 3 (citing N.Y. Exec. L. § 259-c(2) and 9 N.Y.C.R.R. § 80003.3). However, this contention "does not necessarily mean that new conditions, as opposed to re-application of previous conditions, will be imposed upon Plaintiff's release from incarceration . . . ." Lando, 2020 WL 1163857, at *2 n.1. Indeed, relevant New York statutory provisions speak of "re-release" as opposed to "re-parole" for a person in Plaintiff's situation. Id.; see also N.Y. Penal L. § 70.45(5)(d) ("When a

---

[12]  Defendants also argue that "[t]he imposition of a special condition upon the release of an inmate is discretionary in nature and beyond judicial review so long as it is made in accordance with the law." Reply at 4 (quoting Ahlers v. New York State Div. Of Parole, 1 A.D.3d 849, 849 (3d Dep't 2003)). Plaintiff, however, challenges the imposition of the special conditions of release on the basis that they are unconstitutional. Second Am. Compl at 3–9. Thus, the conditions are not beyond judicial review. See Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) (reviewing conditions of parole when the plaintiff alleged they were unconstitutional).

person is alleged to have violated a condition of post-release supervision and [] [DOCCS] has

declared such person to be delinquent . . . if the person is ordered returned to [] [DOCCS], the

person shall be required to serve the time assessment before being *re-released* to post-release

supervision.") (emphasis added); 9 N.Y.C.R.R. § 8002.6(c)(1) ("All parole violators identified as

eligible for re-release . . . will be *re-released* to parole supervision as soon as practicable after

completion of the delinquent time assessment imposed . . . .") (emphasis added).

Moreover, provisions of New York law governing violations of post-release supervision

provide that a term of post release supervision is "interrupt[ed]" upon re-incarceration "until the

person is restored to post-release supervision." N.Y. Penal Law § 70.45(5)(d); see also N.Y.

Penal Law § 70.40(3)(b); Lando, 2019 WL 9045382, at *4. "In other words, . . . a violation of

parole interrupts the period of post-release supervision (meaning it will be restored with the same

general and special conditions. . .), whereas a new felony permanently terminates the period of

post-release supervision because the person is then subject to a new criminal sentence." Lando,

2019 WL 9045382, at *4. Thus, Defendants' Maldonado-based arguments are unfounded.

Defendants have not established that the re-application of previous parole conditions is

not a "foregone conclusion." Lando, 2020 WL 1163857, at *2 n.1. DOCCS imposed the

challenged conditions both in 2013 and 2017. When Plaintiff was released again on February 14,

2019, the conditions were substantially the same as before.[13] July Order at 10. As the Court

concluded in the July Order, "DOCCS' repeated use of the same conditions portends their re-

imposition upon Plaintiff's next release, and the Court discerns no reason to believe the relevant

facts will change before Plaintiff is released and 'expose[d] . . . to actual arrest or prosecution'

---

[13]   As discussed earlier, the one exception—the former, broad restriction on "intimate, sexual, ongoing, social . . . relationship[s]"—was replaced by a slew of similar (albeit somewhat clearer) restrictions on Plaintiff's intimate relationships. See supra note 4.

under conditions that he claims 'deter[] the exercise of his constitutional rights." Id. at 10

(quoting United States v. Loy, 237 F.3d 251, 257 (3d Cir. 2001)).

Thus, the Court finds that Plaintiff's claims challenging his parole conditions are not

moot.

### B.  The Merits of Plaintiff's Request for Injunctive Relief

"A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court

may grant such relief." Monsanto Co. v. Geerston Seed Farms, 561 U.S. 139, 156–57 (2010)

(internal quotations and citations omitted). "A plaintiff must demonstrate: (1) that [he] has

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that considering the balance of hardships between

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

would not be disserved by a permanent injunction." Id.; see also World Wide Polymers, Inc. v.

Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160 (2d Cir. 2012).

Defendants only challenge the second factor; thus, the Court need not address the other

factors at this stage.

Defendants argue that Plaintiff's claim for injunctive relief must be dismissed because

Plaintiff has an adequate remedy under state law, namely, New York's Article 78. Mot. to

Dismiss at 9; see also N.Y. C.P.L.R. § 7801. "Article 78 provides for a proceeding in the nature

of certiorari, mandamus, or prohibition to be brought to challenge, review or compel certain

official action." Billington v. Hayduk, 439 F. Supp. 971, 973 (S.D.N.Y. 1977). Article 78 has

been used to challenge conditions of parole. See Ariola v. New York State Div. of Parole, 880

N.Y.S.2d 367 (2009).

"Defendants' contention, however, confuses the issue of adequacy of a legal remedy, which would obviate the need for injunctive relief, with that of adequacy of a state remedy . . . ." Billington, 439 F. Supp. at 973 (rejecting an argument that Article 78 is an "adequate remedy at law" such that an injunction is not warranted). Although Plaintiff may pursue an Article 78 proceeding in New York to review parole conditions and obtain an injunction, he is not required to do so. See Ennis v. Annucci, No. 18-CV-501, 2019 WL 2743531, *8 (N.D.N.Y. July 1, 2019) (rejecting the defendants' argument that a plaintiff must pursue an Article 78 proceeding to obtain an injunction against parole conditions instead of bringing a proceeding in federal court). "In other words, with respect to the standard for an injunction, the existence of an alternative state remedy is irrelevant." Lando, 2019 WL 9045382 at *4.

Thus, because the existence of a state remedy under Article 78 is not relevant to whether Plaintiff has an adequate remedy at law, Plaintiff has plausibly pled a request for injunctive relief, and the Court denies Defendant's Motion to Dismiss.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 78) is **DENIED**; and it is further

**ORDERED,** that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:      July 27, 2020
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge