UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN H. NEWMAN,

                         Plaintiff,

    -against-                                        3:17-CV-918 (LEK/ML)

ANTHONY ANNUCCI, *et al.*,

                         Defendants.

## MEMORANDUM-DECISION AND ORDER

In 2009, Plaintiff John H. Newman was sentenced to an aggregate prison term of five and a half years and ten years of post-release supervision following his conviction of, among other things, rape in the third degree and criminal sexual act in the third degree. See People v. Newman, 99 A.D.3d 1107 (2012). On August 9, 2013, Plaintiff was released from prison and began a ten-year term of post-release supervision. Dkt. No. 52 ("Second Amended Complaint" or "Complaint") at 1. After that initial release, the New York Department of Corrections and Community Supervision ("DOCCS") revoked his parole on four separate occasions: in 2013, 2017, 2019, and most recently, in 2021. Id. at 2; Dkt. No. 123-3 ("Declaration of Senior Parole Officer Scot Cook" or "Cook Decl.") ¶¶ 6–9. Plaintiff last informed the Court that he is incarcerated at the Elmira Correctional Facility, and that he is "expected to remain so for the next 16 months," with a release date currently set for January 2024. Dkt. No. 137.

In this action, Plaintiff has challenged the constitutionality of his parole conditions under 42 U.S.C. § 1983 ("Section 1983"). When he commenced suit in 2017, Plaintiff broadly challenged the constitutionality of all the conditions imposed upon him in 2013 and 2017, and sought monetary and injunctive relief against two DOCCS officials—Anthony Annucci and Thomas Herzog (collectively, Defendants). Dkt. No. 1 ("Original Complaint") at 5–6. After

years of litigation, and several parole revocations later, Plaintiff's case has narrowed. Presently, he seeks only to enjoin the application and enforcement of parole conditions related to his computer use and internet access in favor of conditions that are "individualized and tailored to meet [his] personal needs." Compl. at 10; see also Dkt. No. 125 ("Declaration of Plaintiff's Counsel John S. Wallenstein" or "Wallenstein Decl.") ¶ 2 ("Plaintiff intends to move forward in this case challenging only those conditions of parole which relate to his use of computers and/or access to the internet[.]").

One of those challenged conditions is Special Condition ("SC") 35, which categorically prohibits Plaintiff from "access[ing] a commercial social networking website." Dkt. No. 123-2 ("Declaration of Assistant Attorney General Erik Pinsonnault" or "Pinsonnault Decl.") at 7–13 ("Exhibit B"). This is commonly referred to as the e-STOP condition, which originated as a provision of New York's Electronic Security and Targeting of Online Predators Act, N.Y. Exec. Law § 259-c(15) (2010). See Jones v. Stanford, No. 20-CV-1332, ECF No. 72, at *2 (E.D.N.Y. Jan. 24, 2022) ("Stipulation of Settlement and Order").[1]

Plaintiff also challenges SC 40A and SC 40C. SC 40A prohibits Plaintiff from "own[ing], us[ing], possess[ing], purchas[ing], or hav[ing] control of any computer, computer related material . . . and/or the internet," without "prior written permission from [his] parole officer." Pinsonnault Decl., Ex. B. Under SC 40C, Plaintiff is required to "provide the parole officer with [his] password and user I.D. for any approved [electronic] device," and to "acknowledge" that such devices are "subject to monitoring and/or search and seizure." Id.

---

[1] On January 24, 2022, the United States District Court for the Eastern District of New York approved a settlement permanently enjoining DOCCS officials from enforcing the e-STOP condition "as to Registrants who have not used the internet to facilitate the commission of their underlying sex offense." Stipulation of Settlement and Order at *3.

Now pending before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 123. For reasons set forth below, the Court presently lacks jurisdiction to decide the Motion on the merits and dismisses the action without prejudice.

## I. BACKGROUND

Plaintiff initially commenced this action pro se on August 21, 2017, six months after DOCCS revoked Plaintiff's parole a second time.[2] While incarcerated, he broadly alleged that the prior conditions of his parole, imposed in both 2013 and 2017, violated his rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Dkt. Nos. 1 ("Original Complaint"), 17 ("First Amended Complaint"). On March 9, 2018, Defendants moved to dismiss the First Amended Complaint for failure to state a claim. Dkt. No. 24. On September 21, 2018, the Court granted the motion and dismissed the First Amended Complaint without prejudice. Dkt. No. 45.

On November 19, 2018, Plaintiff filed his Second Amended Complaint pro se, again alleging that his prior parole conditions, imposed in 2013 and 2017, violated his rights, but this time only under the First, Fourth, and Fourteenth Amendments. Compl. at 1–3. On December 26, 2018, the Honorable David E. Peebles, United States Magistrate Judge, recommended that the

---

[2] DOCCS first revoked Plaintiff's parole in 2013, ten days after his initial release. Compl. at 2. Plaintiff violated his post-release supervision by entering a public library, id., and according to Defendants, by accessing a computer therein and then absconding to Boston, Massachusetts, "without knowledge and permission from his Parole Officer." Cook Decl. ¶ 6. "He was unaccounted for until his apprehension on" January 15, 2014, and "was given 36 months at his parole hearing which was held on" March 12, 2014. Id. On January 17, 2017, Plaintiff was released from prison and returned to parole for a second time. Compl. at 2. However, one month later, DOCCS again revoked his parole. Id. According to Defendants, this revocation occurred because Plaintiff "fail[ed] to register email addresses, us[ed] a computer and social media," and "possess[ed] a computer" without notice or permission. Cook Decl. ¶ 6. On October 11, 2017, an administrative law judge imposed a delinquent time assessment of 24 months. See Newman v. Hoyt, No. 17-CV-808, 2018 WL 5842996, at *3 (N.D.N.Y. Nov. 8, 2018).

3

Second Amended Complaint be dismissed without leave to replead, Dkt. No. 53 ("Report & Recommendation" or "R&R"), to which Plaintiff objected on January 10, 2019, Dkt. No. 55 ("Objections").[3]

Before the Court reviewed the Report & Recommendation and Plaintiff's Objections, Plaintiff filed a Motion for a Writ of Habeas Corpus on January 2, 2019, making similar claims challenging his conditions of release. Dkt. No. 54 ("Habeas Petition"). On January 28, 2019, the Magistrate Judge directed the Clerk to open a new action concerning the Habeas Petition, which was also assigned to this Court. Dkt. No. 59 ("January 2019 Text Order"); see also Newman v. Stanford, No. 19-CV-118 ("Habeas Docket").

Plaintiff was once again released on parole on February 13, 2019, Cook Decl. ¶ 6, with similar conditions of release to the ones imposed in 2013 and 2017, Dkt. No. 64 ("July 12, 2019, Order") at 5–6. Yet again, his release was short-lived. According to Defendants, on or about February 22, 2019, Plaintiff violated his parole conditions a third time by, among other things, possessing a computer without permission, in violation of SC 40A. Cook Decl. ¶ 6.

Before Plaintiff was returned to a DOCCS facility in April 2019, Pinsonnault Decl. at 3–6 ("Exhibit A"), the Court dismissed his Habeas Petition for failure to plead exhaustion of state remedies on February 27, 2019. Habeas Dkt. No. 4. Two weeks later, on March 11, 2019, Plaintiff filed an amended habeas petition, again complaining of the parole conditions imposed on him in the previous month. Habeas Dkt. No. 6 ("Amended Petition").

---

[3] Title 28 of the United States Code, Section 1915, requires a federal district court to dismiss an action brought in forma pauperis if the court determines sua sponte that the action is frivolous or malicious, fails to state a claim, or seeks damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii).

4

On July 12, 2019, after Plaintiff had been reincarcerated for the February 2019 parole violations, the Court adopted the Magistrate Judge's recommendation that Plaintiff's claims for money damages be dismissed,[4] but held that his claims for injunctive relief survived initial review. July 12, 2019, Order at 1–2. The Court refused to adopt the Magistrate Judge's conclusion that Plaintiff's request for injunctive relief was mooted by his February 2019 arrest without briefing from the parties, in part because DOCCS repeatedly imposed the same conditions upon Plaintiff in 2013, 2017, and 2019. Id. at 10.

In the same order, the Court consolidated this action with the Habeas Docket and "designated [this action] as the Lead Case[.]" July 12, 2019, Order at 15. The Court also granted Plaintiff's request for appointment of counsel, Dkt. No. 55 at 1, given that (1) he is "financially eligible," July 12, 2019, Order at 14; (2) his claims have "some chance of success," id. (quoting Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir. 1986)); and (3) his claims raise "complex" "legal issues . . . including whether Plaintiff has standing to challenge his future release conditions despite his incarceration, and whether Heck [v. Humphrey, 512 U.S. 477 (1994)] requires him to use habeas corpus instead of [Section] 1983[.]" July 12, 2019, Order at 14.

Three days later, on July 15, 2019, the Court issued another order, dismissing the Amended Petition because of its failure to show whether his claims were properly exhausted in state court. The Court further stated that if Plaintiff "wishes to proceed with his habeas claims [as a petitioner], he must include them in a consolidated amended complaint in the Lead Case," i.e., this action. Dkt. No. 65 at 6. On September 17, 2019, Plaintiff's newly appointed counsel informed the Court that because Plaintiff "has not exhausted his state remedies as they pertain to

---

[4] "The Magistrate Judge correctly concluded that Plaintiff's claims for damages fail because there are no allegations showing that the named defendants were personally involved in any constitutional violation." July 2019 Order at 11 (citing R&R at 10–12).

5

the pending habeas corpus claim . . . his habeas claims are not yet ripe for adjudication by this Court," and thus Plaintiff "will not file an amended pleading including the same, and respectfully reserves his right to pursue such claims at such time as they are viable." Dkt. No. 73.

On November 4, 2019, while Plaintiff remained incarcerated, Defendants moved to dismiss the case for failure to state a claim and for lack of subject matter jurisdiction. Dkt. No. 78 ("Motion to Dismiss"). Defendants argued "that Plaintiff has been reincarcerated and the conditions of his parole release are no longer in effect. Accordingly, his claims for injunctive relief are moot and must be dismissed." Id. at 8.

After considering the parties' briefing, Dkt. Nos. 78, 85, 86, the Court denied Defendants' motion to dismiss on July 27, 2020, Dkt. No. 87 ("July 2020 Order"). In the denial, the Court stated that "[a] party seeking to have a case dismissed as moot bears a heavy burden[,]" id. at 8 (quoting Student X v. N.Y.C. Dep't of Educ., No. 07-CV-2316, 2008 WL 4890440, at *12 (E.D.N.Y. Oct. 30, 2008)), and ultimately found that Defendants failed to carry it, July 2020 Order at 13. The Court noted that Plaintiff was due to be released again on October 22, 2020, and found there was "no reason to believe the relevant facts will change before Plaintiff is released and exposed" to "conditions that he claims deter the exercise of his constitutional rights." Id. at 12–13 (cleaned up).

On August 10, 2020, Defendants answered the Complaint, Dkt. No. 90, and the case proceeded to discovery. See Dkt. Nos. 88, 89, 91–113. Around the same time, Plaintiff was released on parole again, and eventually signed papers on October 21, 2020, acknowledging his conditions of release, which included SC 35, SC 40A, and SC 40C. Pinsonnault Decl., Ex. B. On November 12, 2020, Defendants deposed Plaintiff. Pinsonnault Decl. at 59–133 ("Exhibit D, Newman Deposition"). On December 17, 2020, Plaintiff deposed José Gonzalez, the DOCCS

parole officer who was responsible for supervising Plaintiff at the time ("Officer Gonzalez"). Pinsonnault Decl. at 18–58 ("Exhibit D, Gonazalez Deposition") at 5:6, 7:17 to :20. The parties attempted to settle Plaintiff's claims throughout discovery, see Dkt. No. 114, and successfully sought to extend the deadline for filing dispositive motions several times, see, e.g., Dkt. No. 111.

In late September 2021, however, DOCCS revoked Plaintiff's parole for a fourth time, having "accus[ed]" him "of possessing and using computers and accessing prohibited websites[.]" Dkt. No. 118 at 1. At the same time, he was also arrested for separate state charges regarding his alleged failure to properly register under the Sex Offender Registration Act ("SORA"). Id.; Cook Decl. ¶¶ 7–9. A few months later, Plaintiff informed the Court he wished only to move forward with his challenge "to those conditions of parole which relate to his use of computers and/or access to the internet, including SC 35 and SC 40." Wallenstein Decl. ¶ 2.

## II.     THE PRESENT MOTION

Defendants moved for summary judgment on December 6, 2021, which included their statement of material facts in accordance with Rule 56.1(a) of the Local Rules of Practice. Dkt. No. 123-4 ("Defendants' Statement of Material Facts"). In their memorandum of law in support of the Motion, they argue that since "[P]laintiff was convicted, inter alia, of a crime in which he subjected an eight-year-old to sexual contact and showed the child pornographic material on a computer or the internet[,]" Dkt. No. 123-1 ("Defendants' Memorandum") at 11, his parole conditions are "reasonably related to his past conduct," and thus constitutional, id. at 8 – 11. Defendants also point out that while Plaintiff was out on parole in late 2020, Officer Gonzalez allowed Plaintiff "to use a computer if it was part of [his] employment[,]" and "to set up and use email in [Officer Gonzalez's] presence to email counsel in the instant action." Def. Mem. at 5–6. In the memorandum of law, Defendants also maintain that Plaintiff's challenges are "not ripe for

7

review, moot, or otherwise nonjusticiable" because the challenged conditions "are no longer in effect due to his [re-]incarceration [in 2021], *and* there is no indicia that such conditions will be imposed in the future." Def. Mem. at 12 (emphasis in original).

Plaintiff opposed the Motion on December 27, 2021, with the Wallenstein Declaration and a memorandum of law in opposition to the Motion, Dkt. No. 125-1 ("Plaintiff's Opposition Memorandum"), but Plaintiff failed to serve a separate responsive statement that admits or denies Defendants' Statement of Material Facts. See Dkt. No. 125. In the memorandum, Plaintiff first argues that SC 35 and SC 40 are unconstitutional as applied to him because, contrary to Defendants' assertions, he did not utilize a computer or the internet in the commission of his crimes. Pl. Opp. Mem. at 5–7. Plaintiff then argues that, regardless of whether he used a computer or the internet in the commission of his crimes, SC 40A is still unconstitutional as applied to him because Officer Gonzalez "made clear in his deposition" that he never intended to exercise his discretion to allow Newman personal computer or internet access, effectively amounting to an outright, and therefore, unconstitutional, ban. Id. at 7–11; see also United States v. Eaglin, 913 F.3d 88, 96–97 (2d Cir. 2019) (recognizing that "sister circuits have similarly rejected absolute Internet bans even where the defendant had used the computer for ill in his crime of conviction") (citations omitted).

Defendants did not file a reply. Then, on August 3, 2022, Plaintiff filed a supplemental opposition to the Motion, Dkt. No. 126 ("Supplemental Opposition"), notifying the Court of the Stipulation of Settlement and Order reached in Jones, which permanently enjoins DOCCS officials from enforcing the e-STOP condition "as to Registrants who have not used the internet to facilitate the commission of their underlying sex offense." Id. at 3. Defendants moved to strike the Supplemental Opposition from the docket, but also substantively replied to arguments

Plaintiff made therein. Dkt. No. 132 ("Motion to Strike and Supplemental Reply"). Therefore, the Court denied the Motion to Strike, and informed the parties that it would consider the Supplemental Opposition and the Supplemental Reply in resolving the Motion. Dkt. No. 133.

Since then, Plaintiff has informed the Court that he is in the custody of DOCCS "at the Elmira Correctional Facility," and "is . . . expected to remain so for the next 16 months[.]" Dkt. No. 137; see also DOCCS, Inmate Lookup, http://nysdoccslookup.doccs.ny.gov (last visited September 8, 2022). DOCCS has specified his earliest release date as January 17, 2024—the same day on which his ten years of post-release supervision expire. Id.

### III.     JUSTICIABILITY

Before assessing the merits of Defendants' Motion, the Court must address its power to adjudicate it. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Article III of the Constitution states that "[t]he judicial Power" of the United States "shall extend to all Cases" and "Controversies." See U.S. Const. art. III, § 2. The Supreme Court has stated that this means all suits filed in federal court must be "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102 (1998) (citations omitted). The federal courts have developed several doctrines to implement this threshold requirement, including the related doctrines of standing and mootness.

A party must have standing to sue for relief in federal court. When "seek[ing] injunctive relief," as Plaintiff does here, the complaining party must demonstrate that:

> [H]e is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the

9

> challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Friends of the Earth v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–181 (2000)). A threatened injury is "imminent" if it is "'certainly impending,' or there is a 'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). "[S]tanding . . . must exist at the commencement of the litigation[,]" and the plaintiff must "allege facts that affirmatively and plausibly suggest that [he or she] has standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55–56 (2d Cir. 2016) (internal quotation marks and citations omitted).

The related doctrine of mootness implicates whether a controversy which once existed has now been resolved or disposed of in some manner, such that the parties have no incentive to actively litigate, and the reviewing court's determination would be of no consequence. See Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013). Therefore, the doctrine of mootness requires that a real and substantial controversy exist "at all stages of review, not merely at the time the complaint is filed." Id. If "an intervening circumstance" deprives the case or controversy of its requisite concreteness or imminence "at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. at 72.[5] Therefore, "[a] party seeking to have a case dismissed as moot bears a heavy burden." Student X, 2008 WL 4890440, at *12.

---

[5] As stated in the Court's July 2020 Order: "There are two caveats to the mootness rule. First, 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' Friends of the Earth v. Laidlaw Envtl. Servs. Inc., 528 U.S. 167, 189 (2000). Second, a claim is not moot if it is 'capable of repetition, yet evading review,' which applies 'where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action

Plaintiff had standing to challenge his conditions of release, including the computer and internet-related conditions, when he filed his Complaint. By that time, DOCCS had already applied the challenged conditions twice, in both 2013 and 2017; and on October 11, 2017, an administrative law judge only ordered a delinquent time assessment of 24 months. See Newman, 2018 WL 5842996, at *3. Since his ten years of post-release supervision would not expire until January 2024, it appeared reasonably likely that Plaintiff would be released on parole for a third time, and that DOCCS would "impose the same conditions again upon [that] release." July 12, 2019, Order at 9 (finding that Plaintiff had standing to sue "for purposes of [Section 1915] review only"). "Indeed, [when] Plaintiff was released on February 14, 2019," id. at 10, DOCCS applied most of the previous 2013 and 2017 conditions, including SC 35 and SC 40, id. at 5–6.

After Plaintiff was reincarcerated in April 2019, Defendants argued that this intervening event mooted Plaintiff's claims because "the conditions of his parole release are no longer in effect." Mot. to Dismiss at 8. The Court rejected that argument. July 2020 Order at 8–13. The Court observed that Plaintiff was due to be released again on October 22, 2020, and thus found there was "no reason to believe the relevant facts will change before Plaintiff is released and exposed" to "conditions that he claims deter the exercise of his constitutional rights." Id. at 12–13 (cleaned up). As later events demonstrated, "the relevant facts" did not "change[.]" Id. When Plaintiff was released on parole in late 2020, most of the same conditions were reimposed, including SC 35 and SC 40. Pinsonnault Decl., Ex. B.

Now that Plaintiff has been reincarcerated yet again, Defendants seek to relitigate mootness. They argue in part that Plaintiff's action has been rendered moot because the

---

again.'" Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal quotation marks and citation omitted)." July 2020 Order at 8 n.9.

challenged conditions "are no longer in effect due to his [re-]incarceration [in 2021], *and* there is no indicia that such conditions will be imposed in the future." Def. Mem. at 12 (emphasis in original). They rely in part on Gordon v. Semrug, No. 14-CV-324S, 2017 WL 2241966 (W.D.N.Y. May 23, 2017), to make their case. Def. Mem. at 13. In that case, the "[p]laintiff was released in July 2015, having completed his term of parole." Gordon, 2017 WL 2241966, at *3. The Court found that his "request for injunctive relief [concerning his parole conditions] is moot" because his supervised release term had expired by virtue of the passage of time. Id. at *6.

Unlike in Gordon, Plaintiff's term of supervised release has not yet expired by virtue of the passage of time. DOCCS, however, has since specified that his earliest release date is January 17, 2024—the same day on which his ten years of post-release supervision expire. DOCCS, Inmate Lookup, http://nysdoccslookup.doccs.ny.gov (last visited September 8, 2022); see also Dkt. No. 137 (Plaintiff's counsel informing the Court that Plaintiff "is . . . expected to remain" in the custody of DOCCS "at the Elmira Correctional Facility" until January 2024). While there was "a reasonable expectation," Spencer, 523 U.S. at 17, that Plaintiff would be subject to the same 2013 and 2017 parole conditions after his reincarceration in April 2019, that is not the case here.

Now, given that Plaintiff is expected to remain in custody until the end of his term of supervised release, Defendants are correct that "there is no indicia that such conditions will be imposed in the future." Def. Mem. at 12.[6] Even if this matter were to proceed to trial and Plaintiff succeeded on the merits of his claims, an order from this Court enjoining DOCCS from applying SC 35 and SC 40 to Plaintiff in favor of conditions that are "individualized and tailored

---

[6] Plaintiff could possibly encounter SC 35 and SC 40 again in the future if he were convicted of a new felony in New York State and sentenced to another term of supervised release, but such a controversy is too remote and speculative for adjudication, and thus not ripe for review.

12

to meet [his] personal needs," Compl. at 10, would be of no effect. Therefore, the Court must dismiss Plaintiff's claims for injunctive relief as moot.[7]

As Plaintiff's counsel alluded to in his most recent correspondence with the Court, Dkt. No. 137 (referencing 28 U.S.C. § 2254), federal habeas remains a possible route for Plaintiff to pursue relief.[8] In fact, when the Court appointed counsel to represent Plaintiff, Dkt. No. 63, it did so pursuant to 18 U.S.C. § 3006A(A)(2)(B), which provides representation to "any financially eligible person who . . . is seeking relief under section[] . . . 2254 . . . of title 28" when "the interests of justice so require[.]" July 12, 2019, Order at 14 (quoting 18 U.S.C. § 3006A(A)(2)(B)). After that appointment, Plaintiff chose not to amend his Complaint to replead his habeas claims because, as of September 17, 2019, he had "not exhausted his state remedies as they pertain to the pending habeas corpus claim," but "respectfully reserve[d] his right to pursue such claims at such time as they are viable." Dkt. No. 73.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that this action be **DISMISSED without prejudice**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment, Dkt. No. 123, be **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[7] It is worth noting that in the Court's first uniform pretrial scheduling order, dispositive motions were to be filed on or before February 15, 2021, Dkt. No. 95 at 3, which was more than half a year before Plaintiff's fourth (and final) parole revocation mooted his claims for injunctive relief. Plaintiff, in agreement with Defendants, requested to extend this deadline several times, see, e.g., Dkt. No. 108, ultimately pushing it past the date of the fourth revocation, see Dkt. Nos. 116, 118.

[8] The Court expresses no opinion on the merits or timeliness of a renewed habeas petition.

**IT IS SO ORDERED.**

DATED: September 12, 2022
Albany, New York

LAWRENCE E. KAHN
United States District Judge